**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CURTIS GRIER, | ) | CASE NO. 5:22-CV-01948 |
| Plaintiff, | ) | |
| | ) | U.S. DISTRICT JUDGE |
| | ) | JAMES GWIN |
| v. | ) | |
| | ) | U.S. MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | JENNIFER DOWDELL ARMSTRONG |
| SECURITY, | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.     INTRODUCTION

Plaintiff Curtis Grier ("Mr. Grier") seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF Doc. 1). U.S. District Judge James Gwin has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). Pursuant to Local Civil Rule 72.2, this matter was referred to me for preparation of a Report and Recommendation. For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

## II.     PROCEDURAL HISTORY

### A.  *Previous Application*

On June 6, 2017, Mr. Grier filed applications for DIB and SSI that alleged a disability onset date of May 15, 2017. (Tr. 60).[1] In June 2019, Administrative Law Judge ("ALJ") Aliberti issued

---

[1] The administrative transcript ("Tr.") is located at ECF Doc. 5 on CM/ECF.

a written decision finding that Mr. Grier was not disabled and determining that he had the residual

functional capacity ("RFC") to:

> [p]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except
> that [he] can occasionally climb ramps and stairs, but never climb ladders, ropes or
> scaffolds[,]…can frequently balance, kneel and crouch[,]…can occasionally stoop
> and crawl[,]…[and] must alternate between sitting and standing once every sixty
> minutes for up to five minutes at a time without increasing time off task.

(Tr. 63).

### B. *Present Application*

On August 14, 2020, Mr. Grier filed applications for DIB and SSI, alleging a disability

onset date of June 8, 2019. (Tr. 78, 85). These applications were denied initially and upon

reconsideration. (Tr. 78-91, 94-105). Mr. Grier requested a hearing before an ALJ. (Tr. 131-32).

On August 3, 2021, the ALJ held a telephonic hearing due to the COVID-19 pandemic, during

which Mr. Grier, represented by counsel, and a vocational expert testified. (Tr. 32-56).

On September 29, 2021, the ALJ issued a written decision finding that Mr. Grier was not

disabled. (Tr. 25). The ALJ's decision became final on October 4, 2022, when the Appeals Council

denied further review. (Tr. 1-3). Mr. Grier filed a Complaint on October 28, 2022. (ECF Doc. 1).

He asserts the following assignment of error:

> (1) Whether the ALJ erred by not adequately evaluating the claimant's worsened
> pain.

(ECF Doc. 6, PageID#175).

### III.   BACKGROUND INFORMATION

### A.   Personal, Educational, and Vocational Experience

Mr. Grier was born in 1973, and he was 46 years old on the alleged disability onset date.

(Tr. 23). He is unmarried, and he lives with his younger sister. (Tr. 36). At the time of the hearing,

he possessed a driver's license and was able to drive "periodically, not for long periods." (Tr. 36-

37). He has at least a tenth-grade education. (Tr. 37). His past relevant work was employment as a cook and assistant manager, machine operator, and fast food cook. (Tr. 23).

### B.  **Relevant Hearing Testimony**

#### 1.  *Mr. Grier's Testimony*

Mr. Grier testified that he is unable to work due to pain. (*See* Tr. 42). Specifically, he testified that it is painful to do "any of the movement that [he] used to get to [do]." (*Id.*). He stated that sitting and standing "kind of helps" but it does not "help as much as [he] need[s] it to [,]" so he must often lie down. (Tr. 42-43). He estimated that he lies down every 10 minutes and will stay in that position for 15 minutes or longer. (Tr. 43).

Mr. Grier also testified that, since his second surgery, he feels that the limitations he is experiencing has worsened. (Tr. 46). He testified that his pain has worsened, and he has anxiety and depression due to not being able to work. (*Id.*). He further testified that his pain wakes him up in the middle of night and prevents him from sleeping all night. (*Id.*). As a result of his difficulty sleeping at night, Mr. Grier testified that he sleeps whenever he can. (*Id.*).

Mr. Grier further testified that he has issues with driving due to his condition. (Tr. 47). He testified that because driving requires him to sit up and look around for other cars, this places a strain on his back that feels like he has "rocks in [his] back" once he exits his car. (*Id.*).

Mr. Grier testified that he had back surgery in January 2020 to remove hardware from his original back surgery. (*See* Tr. 47-48). He testified that this surgery did not improve any of his symptoms. (Tr. 48). He stated that it only fixed faulty hardware placed in his back. (*See* Tr. 48). Mr. Grier testified that his medical providers have not discussed with him the potential of any additional surgery. (*See id.*). He stated that he prefers not to treat his pain with medications due to

their side effects on his body. (*Id.*). He testified that besides medication, he does not have any other pain treatment he could take except injections. (*Id.*).

### 2. *Vocational Expert's Testimony*

The vocational expert ("VE") testified that Mr. Grier had past relevant work as a cook and assistant manager, machine operator, and fast food cook. (Tr. 50-51). As a first hypothetical, the ALJ asked the VE whether a hypothetical individual with Mr. Grier's age, education, and vocational experience could perform work at the sedentary exertional level, except with the additional limitations of occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; frequently balancing, kneeling, and crouching; occasionally stooping and crawling; and requiring the ability to alternate between sitting and standing once every 60 minutes for up to 5 minutes at a time without increasing time off-task. (Tr. 51-52). The VE opined that this individual could not perform past work, but could perform other work as an addresser, table worker, and food and beverage telephone order clerk. (Tr. 52-53).

The ALJ also asked the VE whether there would be work available if the hypothetical individual would be off-task for 20% of the workday. (Tr. 53). The VE opined that that there would be no work available. (*Id.*).

Mr. Grier's counsel asked whether the individual from the first hypothetical could perform work if he had to alternate between sitting and standing positions every 10 minutes. (Tr. 54). The VE opined that this restriction would eliminate all three jobs that the VE earlier opined that individual could perform. (*Id.*).

### C.  **Relevant Non-Medical/Medical Opinion Evidence**[2]

In November 2020, Dr. Mehr Siddiqui, M.D., a state agency physical examiner, reviewed the medical evidence in the record at the initial level of consideration. Dr. Siddiqui opined that Mr. Grier's severe impairment was a back disorder. (Tr. 87). Dr. Siddiqui further opined that Mr. Grier was capable of work at the light exertional level; can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 83, 89). In March 2021, Dr. Steve McKee, M.D., another state agency physical examiner, agreed with Dr. Siddiqui's findings. (Tr. 94-96).

### D.  **Relevant Medical Evidence**[3]

In 2017 (approximately two years prior to the alleged period of disability), Mr. Grier underwent a laminectomy, fusion, and decompression surgery in his lower back. (Tr. 400). This procedure was performed to treat a burst fracture of the L1 level of Mr. Grier's spine incurred during a motor vehicle incident. (Tr. 360).

On August 7, 2019, Mr. Grier attended a pain management appointment. He reported "constant" pain exacerbated by standing/sitting "a long time" and that "nothing" made his pain better. (Tr. 529). He stated that his pain starts in his lower back and radiates upwards. (*Id.*). He reported that he tried acupuncture, facet injections, Gabapentin, and Diclofenac, but none of these treatments provided any pain relief. (*Id.*). Paraspinal pain was present throughout his thoracic area, but there was no pain or weakness in his legs. (*Id.*). On physical examination, there was tenderness to palpation in the midline paravertebral muscles. (Tr. 530). His SI joints were not tender and straight leg raises were negative bilaterally. (*Id.*). Mr. Grier had full range of motion in all

---

[2] Because Mr. Grier challenges the ALJ's evaluation of his subjective pain symptoms stemming from his physical impairments, this summary will be limited to the state agency findings regarding his physical health.
[3] Mr. Grier solely argues that the ALJ erred in evaluating his physical impairments. Accordingly, this summary will be limited to evidence related to those impairments.

extremities; intact sensation to light touch on his feet, lower legs, hands, and forearms; normal motor strength; and normal reflexes in his extremities but antalgic gait. (Tr. 530-31).

On August 23, 2019, Mr. Grier received a CT scan of his lower back. (Tr. 361). The imaging revealed mild lumbar spondylosis with mild-to-moderate bilateral foraminal narrowing at two levels. (Tr. 362). The scan also revealed bilateral loosening of surgical screws implanted from Mr. Grier's 2017 surgery. (Tr. 361). Mr. Grier rated his pain as a "10/10." (Tr. 406).

At a September 11, 2019, pain management appointment, Mr. Grier complained of constant lower and mid-back pain exacerbated by bending, lifting, and standing for long periods. (Tr. 521). Medical providers noted that Mr. Grier was currently participating in physical therapy and had been using a TENS unit for pain. (*Id.*). His neck examination was normal. (*Id.*). He had midline tenderness in his mid-back, mild tenderness to the touch in his lower back, and very limited range of motion in his lower back, including decreased flexion and extension. (Tr. 521-22). He exhibited no SI joint tenderness, negative straight leg raise testing, full range of motion in his arms and legs, normal sensation in his feet, legs, hands, and forearms, normal motor strength, and normal reflexes but antalgic gait. (Tr. 522).

At his October 1, 2019, pain management appointment, Mr. Grier received trigger point injections to the lumbar paravertebral muscles. (Tr. 519).

On October 8, 2019, Mr. Grier reported that he had "constant" pain in his lower back exacerbated by "activity." (Tr. 515). He reported that heat and a TENS unit made his pain better. (*Id.*). He reported that the trigger point injection administered the previous week did not provide relief. (*Id.*). He also reported that Tramadol helped his pain without side effects. (Tr. 517). His physical examination revealed visible well-healed scars bilaterally in his central thoracic spine. (Tr. 515). He had midline tenderness in his mid-back, mild tenderness to the touch in his lower

back, and very limited range of motion in his lower back, including decreased flexion and extension. (*Id.*). He exhibited no SI joint tenderness, negative straight leg raise testing, full range of motion in his arms and legs, normal sensation in his feet, legs, hands, and forearms, normal motor strength, and normal reflexes but antalgic gait. (Tr. 515-16).

In January 2020, Dr. Bradley Inkrott, M.D., discussed surgery with Mr. Grier. (*See* Tr. 305). Dr. Inkrott noted that Mr. Grier presented with "loosening of hardware and painful hardware," and that Mr. Grier's "quality of life is totally unacceptable and [he was] unable to perform activities of daily living." (*Id.*). Dr. Inkrott noted that Mr. Grier had exhausted "all forms of conservative measures that [he had] recommended." (*Id.*). Dr. Inkrott explained to Mr. Grier that the role of spine surgery is "to obtain a meaningful functional recovery and does not guarantee a 100% recovery," and that he cannot "predict biology and the nerves may take time to heal, if at all." (*Id.*). After discussing his options, including the risks associated with another option, Mr. Grier underwent surgery to remove the hardware from his previous back surgery. (Tr. 318).

Mr. Grier attended another pain management appointment on February 26, 2020. (Tr. 499). He described his pain as an 8/10. (*Id.*). He reported that medications and repositioning helped with pain. (*Id.*). Upon examination, Mr. Grier's neck was normal. (Tr. 500). He had tenderness to the paravertebral muscles and midline tenderness in his mid-back, mild paraspinal tenderness to the touch in his lower back, and very limited range of motion in his lower back including decreased flexion and extension. (*Id.*). He also had antalgic gait but no SI joint tenderness; negative straight leg raise testing; normal sensation in his feet, legs, hands, and forearms; normal motor strength; and normal reflexes. (*Id.*). Treatment notes indicated that Mr. Grier completed physical therapy, which was beneficial. (Tr. 501).

On April 10, 2020, Mr. Grier attended another pain management appointment. (Tr. 491). He reported pain exacerbated by sitting/standing a long time and laying down, and that this pain was improved through changing positions and medications. (*Id.*). His physical examination revealed visible well-healed scars bilaterally in Mr. Grier's back. (Tr. 492). There was mild paraspinal tenderness to the touch bilaterally and pain with facet palpation in his lower back. (*Id.*). The range of motion in his lower back was overall very limited with decreased flexion and extension. (*Id.*). He had antalgic gait but displayed normal range of motion in his arms and legs; normal sensation in his feet, legs, hands, and forearms; and normal motor strength throughout. (*Id.*).

Dr. Grier's medical providers proscribed new pain medication on July 10, 2020. (Tr. 381). On August 28, 2020, Mr. Grier received another trigger point injection. (Tr. 472-73). Mr. Grier was administered a round of lumbar facet medial branch blocks in September 2020. (Tr. 561). In October 2020, Mr. Grier again received trigger point injections. (Tr. 554). At his pain management appointment on November 5, 2020, the nurse practitioner increased the dosage of his pain medications. (*See* Tr. 551).

On December 4, 2020, Mr. Grier reported at his pain management appointment that he had constant pain in his lower back exacerbated by sitting, standing, and walking. (Tr. 543). His physical examination showed tenderness to the touch to the midline and paravertebral muscles. (Tr. 544). The inspection of his bilateral knees was symmetric, and his gait was antalgic. (*Id.*). Mr. Grier displayed normal range of motion in his arms and legs; normal sensation in his feet, legs, hands, and forearms; and normal motor strength throughout. (*Id.*).

On May 3, 2021, Mr. Grier saw Ms. Lauren Morlan, APRN. (Tr. 573-79). He reported ongoing chronic pain and tightness in his lower back/buttocks. (Tr. 573). He reported that he

stopped attending his pain management appointments "because his medication was increased and [his] pain was not relieved." (*Id.*). He stated that "he did not want to keep taking medication." (*Id.*). In the "Subjective" section, Ms. Morlan noted that Mr. Grier had tried injections, acupuncture, and doing exercises at home that were previously prescribed by his physical therapist. (*Id.*).

## IV.    THE ALJ'S DECISION

In her September 2021 decision, the ALJ first determined that Mr. Grier had not engaged in substantial gainful activity since June 8, 2019, the alleged onset date. (Tr. 19). The ALJ further determined that Mr. Grier had the following severe impairments: lumbar spondylosis, post laminectomy syndrome, and degenerative joint disease of the knees. (*Id.*). The ALJ, however, found none of these impairments—individually or in combination—met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 20).

The ALJ also determined that Mr. Grier could perform sedentary work, except that Mr. Grier can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance, kneel, and crouch; and occasionally stoop and crawl. (*Id.*). The ALJ further determined that Mr. Grier must alternate between sitting and standing once every sixty minutes for up to five minutes at a time without increasing time off. (*Id.*). The ALJ next determined that Mr. Grier is unable to perform any past relevant work. (Tr. 23). She also determined that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a "not disabled" finding, regardless of whether Mr. Grier has transferable job skills. (*Id.*). However, the ALJ determined that – considering Mr. Grier's age, education, work experience, and residual functional capacity – there are jobs that exist in significant numbers in the national economy that Mr. Grier can perform, including employment as an addresser and food and beverage telephone order clerk. (Tr. 24). Accordingly, the ALJ determined that Mr. Grier had

not been under a disability, as defined in the Social Security Act, from June 8, 2019, through the date of her decision. (*Id.*).

## V.    LAW AND ANALYSIS

### A.  <u>Standard of Review</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip*, 25 F.3d at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported

by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

### B.  Standard for Disability

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

C.  **Evaluation of a Claimant's Symptoms**

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating these symptoms. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x. 540, 542 (6th Cir. Aug. 5, 2014); *Massey v. Comm'r of Soc. Sec.*, 2011 WL 383254, at * 3 (6th Cir. Feb. 7, 2011). First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms. Second, the ALJ "must evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1). *See also* SSR 16-3p, 2016 WL 1119029 (March 16, 2016).[4]

In evaluating a claimant's symptoms at the second step of the analysis, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. Beyond medical evidence, there are seven factors that the ALJ should consider. These factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms;

---

[4] The SSA previously characterized the evaluation of a claimant's subjective symptom complaints as a "credibility" determination. *See* SSR 96-7p, 1996 SSR LEXIS 4 (July 2, 1996). In March 2016, however, the SSA issued SSR 16-3p. Therein, the SSA explained that this characterization did not accurately reflect the language in the regulations and eliminated the term "credibility" from its sub-regulatory policy. *See* SSR 16-3p, 2016 WL 1119029 (Oct. 25, 2017). The SSA explained that "subjective symptom evaluation is not an examination of an individual's character," but is instead an examination of the subjective complaints' consistency with other evidence in the record. SSR 16-3p, 2016 WL 1119029. Despite these changes in terminology, courts have concluded that SSR 16-3p did not substantially change existing law on this issue. *See Banks v. Comm'r of Soc. Sec.*, No. 2:18-cv-38, 2018 WL 6060449, at *5 (S.D. Ohio Nov. 20, 2018) (quoting language in SSR 16-3p that states intention to "clarify" and not to substantially "change" existing SSR 96-7p), *report and recommendation adopted*, 2019 WL 187914 (S.D. Ohio Jan. 14, 2019).

and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* SSR 16-3p, 2016 WL 1119029, at *7. The ALJ is not required to discuss each of these factors or even all the evidence in the record, but need only acknowledge the factors and discuss the evidence that supports his decision. *See Bryson v. Comm'r of Soc. Sec.*, No. 1:20-cv-1137, 2021 WL 2735993, at *14 (N.D. Ohio June 10, 2021), adopted by, 2021 WL 2720071 (N.D. Ohio July 1, 2021). However, "[i]n evaluating an individual's symptoms, it is not sufficient for [an ALJ] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p, 2016 WL 1119029, at *9. Rather, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*; *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so.").

An ALJ is not required to accept the claimant's complaints at face value but may discount them based on his consideration of the above factors. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x. 113, 119 (6th Cir. 2016); *Bryson*, 2021 WL 2735993, at *15. In light of the ALJ's opportunity to observe the claimant's demeanor, the ALJ's evaluation of a claimant's subjective symptoms is entitled to considerable deference and should not be discarded lightly. See Dooley, 656 Fed. Appx. at 119 ("[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'") (quoting *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)); *see also Walters v. Comm'r. of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Jidas v. Comm'r of Soc. Sec.*,

13

No. 17-14198, 2019 WL 2252289, at *8-9 (E.D. Mich. Feb. 26, 2019), *report and recommendation adopted*, 2019 WL 1306172 (E.D. Mich. March 22, 2019). Indeed, a reviewing court should not disturb an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001); *see also Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 788 (6th Cir. 2017) (noting that "while an ALJ's credibility determinations must be supported by substantial evidence, we accord them special deference"); *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016) (noting that, "in practice ALJ credibility findings have become essentially 'unchallengeable.'"); *Riebe v. Comm'r of Soc. Sec.*, No. 1:18-CV-1652, 2019 WL 4600628, at *7-8 (N.D. Ohio Sept. 23, 2019) (same).

### D.  Residual Functional Capacity (RFC)

Prior to determining whether a claimant can perform his past relevant work at Step Four, an ALJ determines a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity."); 20 C.F.R. § 404.1520(e) ("[W]e will assess and make a finding about your [RFC] based on all the relevant medical and other evidence in your case record[.]"). RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1). Agency regulations direct the ALJ's assessment of a claimant's RFC is to consider the functional limitations and restrictions resulting from a claimant's medically determinable impairment or combination of impairments, including the impact of any related symptoms on the claimant's ability to do sustained work-related activities. SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

### E.  Substantial Evidence Supports the ALJ's Evaluation of Mr. Grier's Subjective Pain Symptoms

Mr. Grier argues that the ALJ's decision did not correctly weigh "new and material evidence" of his worsening back pain. (ECF Doc. 6, PageID#724). Specifically, Mr. Grier

14

contends that the record evidence as a whole establishes that his worsened pain further deteriorated his functioning and prevents him from sustaining any work in the national economy. (*Id.*). In support of this argument, he points to: (1) a 2020 surgery that he underwent to correct "faulty" hardware implanted into his back (Tr. 307-14, 318, 319); (2) the January 2020 opinion of Dr. Inkrott, Mr. Grier's surgeon, that "[his] quality of life is totally unacceptable and [he is] unable to perform activities of daily living" (Tr. 305); (3) Mr. Grier's endorsement of "excruciating pain" during his medical appointments (Tr. 393, 393, 406, 453, 501, 521); and (4) Mr. Grier's continuous ratings of pain as 9/10 or 10/10 during 2020 and 2021 (Tr. 356, 367, 406). (ECF Doc. 8*, PageID#724-25). Further, he argues that the existence of his worsening pain and functioning during the alleged period of disability is reflected in his activities of daily living and the objective medical evidence. (*See id.* at PageID#725-26). Thus, Mr. Grier concludes that the ALJ improperly applied *Drummond v. Commissioner of Social Security,* 126 F.3d 837, 838 (6th Cir. 1997), and that Mr. Grier's  claim should be remanded so that the RFC can be redetermined by considering the effects of his worsened chronic pain. (*Id.* at PageID#726).

The Commissioner responds that substantial evidence supports the ALJ's evaluation of Mr. Grier's symptoms. (ECF Doc. 7, PageID#734-35). The Commissioner further characterizes Mr. Grier's argument regarding the ALJ's evaluation of his subjective symptoms as an impermissible request for this Court to try this case *de novo*. (*See id.* at PageID#735-36). Finally, the Commissioner contends that – although Mr. Grier points to his subjective pain complaints and the imaging that eventually led Mr. Grier to surgery – the ALJ considered all this evidence but set forth conflicting objective and opinion evidence. (*Id.* at PageID#736). Accordingly, the Commissioner requests that the Court affirm the Commissioner's decision. (*Id.*).

15

In *Drummond*, 126 F.3d at 838, an ALJ denied a claimant's initial application based on the determination that the claimant could not perform her past work but retained the residual functional capacity for sedentary work. After the claimant re-filed her disability claim, a second ALJ denied the application based on a determination that the claimant retained an RFC suitable for medium-level work. *Id.* at 839. Upon review, the Sixth Circuit held that "the principles of *res judicata* can be applied against the Commissioner," and that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d 837, 842 (6th Cir. 1997).

After *Drummond*, the Social Security Administration adopted Acquiescence Ruling 98-4(6), 1998 WL 283902 (June 1, 1998). This Ruling provided that:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations, or rulings affecting the finding or the method for arriving at the finding.

1998 WL 283902, at *3.

But in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018), the Sixth Circuit explained that "[w]hen an individual seeks disability benefits for a distinct period of time, each application is entitled to review.". Thus, the *Earley* court held that "*res judicata* only 'foreclose[s] successive litigation of the very same claim.'" *Id.* ("[A] claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994."). Therefore, *Earley* "establishes that a claimant's second application is entitled to review free of any presumption that a previously determined RFC is correct." *Wahlert v. Comm'r of Soc. Sec.*, No. 5:22-cv-01324-SL, 2023 WL 4079203, at *9 (N.D. Ohio May 15, 2023) (citing *Nadjil v. Comm'r of Soc. Sec.*, No. 1:21-cv-

01578-SL, 2022 WL 2820413, at *9-10 (N.D. Ohio July 8, 2022)), *report and recommendation adopted*, 2023 WL 4417397 (N.D. Ohio July 10, 2023). Significantly, the *Earley* court recognized that "[f]resh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Earley*, 893 F.3d at 934. Thus, "when a claimant has previously filed an application for benefits an ALJ has rendered a final decision, an ALJ considering a claimant's new application encompassing a different time period may find that the prior ALJ's findings are legitimate and adopt those findings absent new and material evidence." *Black v. Comm'r of Soc. Sec.*, No. 1:20-cv-00183, 2021 WL 371730, at *16 (N.D. Ohio Feb. 3, 2021).

Although not entirely clear, Mr. Grier's appears to contend that the ALJ failed to give his application the "fresh look" required by *Earley*. The ALJ's decision, however, shows that despite her reference to *Drummond*, she properly applied the *Earley* standard. The ALJ approached Mr. Grier's second application with a fresh look and primarily relied on evidence generated after the alleged disability onset date of June 8, 2019.

Specifically, the ALJ analyzed Mr. Grier's pain symptom severity related to his lower back impairment with evidence generated after the alleged disability onset date of June 8, 2019. This analysis complied with SSR 16-3p and, further, the ALJ's findings are supported by substantial evidence. The ALJ first discussed the location, duration, frequency, and intensity of Mr. Grier's symptoms, along with precipitating and aggravating factors. 20 C.F.R. § 404.1529(c)(3)(ii)-(iii). For example, the ALJ observed that Mr. Grier testified that he experienced back pain that was worsened by work, woke him up in the middle of the night, and caused him to need to change positions. (Tr. 21; *see* Tr. 43, 46, 521). Then, the ALJ noted the precipitating and aggravating factors by noting that Mr. Grier testified that due to pain he could only lift 15 to 20 pounds at a

time and had difficulties squatting, bending, standing, walking more than a block, sitting, kneeling, climbing stairs, putting on socks, and tying his shoes. (Tr. 21; *see* Tr. 248). But the ALJ also noted examinations where Mr. Grier exhibited negative bilateral straight leg raises; normal range of motion in his extremities; no SI joint tenderness; normal motor strength; normal reflexes; and normal sensation in his arms and legs. (Tr. 21-22; *see* Tr. 492, 500, 504, 516, 521-22, 544).

The ALJ also discussed the effectiveness of Mr. Grier's medication, treatments that he received other than medication, and other measures  used to relieve his back pain. 20 C.F.R. § 404.1529(c)(3)(iv)-(vi). Regarding the effectiveness of Mr. Grier's medication, the ALJ observed that in October 2019, Mr. Grier reported that Tramadol helped his pain without side effects. (Tr. 22; *see* Tr. 517). The ALJ also noted Mr. Grier's testimony that Gabapentin, Diclofenac, and facet injections did not provide him any pain relief. (Tr. 21; *see* Tr. 529). After discussing the effectiveness of Mr. Grier's treatments, the ALJ also observed that Mr. Grier received trigger-point pain injections in 2019 and 2020. (Tr. 21-22; *see* Tr. 519, 553). The ALJ further noted Mr. Grier's report that he tried acupuncture without relief. (Tr. 21; *see* Tr. 44, 453, 529). But the ALJ also considered records showing Mr. Grier obtained some pain relief with a TENS unit and that Mr. Grier completed physical therapy, which was reported to have been beneficial. (Tr. 21-22; *see* Tr. 501, 515).

Further, the ALJ  evaluated the opinions of the state agency medical consultants. Significantly, no medical opinion evidence supported including additional limitations in the RFC. Rather, state agency reviewing physician, Dr. Siddiqui, reviewed Mr. Grier's medical record at the initial level in November 2020 and opined that Mr. Grier could perform a reduced range of light work. (Tr. 22; *see* Tr. 81-82). But the ALJ found this opinion not entirely persuasive as Mr. Grier's medical evidence demonstrated no significant worsening or improvement in Mr. Grier's condition

from his previous disability determination in June 2019. (Tr. 16, 22 (discussing Tr. 60-70)). Thus, after assessing Mr. Grier's subjective complaints and the evidence in the record, the ALJ reached an RFC finding more restrictive than Dr. Siddiqui's opinion.  Specifically, the ALJ found that Mr. Grier should be limited to work at the sedentary exertional level rather than light work.

Mr. Grier argues that the ALJ "improperly weighed" the evidence of his worsening condition. However, a good portion of the evidence upon which he relies are his own subjective complaints. (*See generally* ECF Doc. 6, PageID#725). For example, while Mr. Grier notes that "[a]ll of [his] treatment modalities, including acupuncture, physical therapy, trigger point injections, medications, and branch block injections failed to alleviate the pain" (ECF Doc. 6, PageID#725 (citing Tr. 573)), this medical evidence was Mr. Grier's subjective report to his medical provider, *not* his medical provider's observation. (*See* Tr. 573 (nurse practitioner's notes under the "Subjective" section of the progress notes that Mr. Grier reported "chronic pain and no change the day of his accident"; that he has "improved almost back to his baseline pain"; that he stopped going to pain management "because his medication was increased and pain was not relieved"; that he "did not want to keep taking medication"; that he has "tried injections [and] acupuncture"; and that he "has been doing exercises at home that was previously prescribed" by his physical therapist.)).

But Mr. Grier correctly asserts that subjective complaints can support a claim for disability if there is objective medical evidence that also "evidences [his] underlying medical condition." (*Id.* at PageID#726 (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 150-51 (6th Cir. 1990)). Specifically, he contends his medical imaging and the surgeries performed on his back – and the accompanying pain symptoms – support "a high degree of degeneration." (*Id.* (citing Tr. 314, 318, 319, 361)). However, despite citation to evidence in Mr. Grier's brief that he believes

19

supports his position, the ALJ did in fact consider this very evidence. For example, Mr. Grier appears to contend that the ALJ did not account for his second surgery (*i.e.*, the January 2020 surgery removing faulty hardware in his back). (*See id.* at PageID#725, 727). But the ALJ discussed Mr. Grier's January 2020 back surgery. (Tr. 22; *see* Tr. 318). Similarly, Mr. Grier points to imaging that eventually led to Mr. Grier's January 2020 surgery, but this argument overlooks that the ALJ did in fact consider this imaging in the opinion. (Tr. 21-22; *see, e.g.*, Tr. 386, 608, 619). The ALJ then also, as discussed above, set forth conflicting objective and opinion evidence in her decision.  For example, she pointed to examinations where Mr. Grier exhibited negative straight leg raise testing, no SI joint tenderness, normal range of motion in his arms and legs, normal motor strength, normal reflexes, and normal sensation in his arms and legs. (Tr. 21-22; *see, e.g.*, Tr. 500, 522, 530-31, 544). The ALJ further observed that in February 2020, Mr. Grier was noted to have completed physical therapy, which was reported to have been beneficial. (Tr. 22). The ALJ even evaluated the state agency opinion and assessed a more restrictive RFC than that opined by the state agency physician.

A comprehensive review of the ALJ's decision reveals that the ALJ was guided by previous findings but accounted for new evidence in accord with *Earley* when formulating Mr. Grier's RFC. Thus, the ALJ gave a "fresh look" to Mr. Grier's current application. Although the ALJ did not ultimately cite *Earley* in her decision, the ALJ adhered to the principles set forth in *Earley* (despite citing *Drummond*) when she evaluated Mr. Grier's impairments during the subsequent application period. *See Petro v. Comm'r of Soc. Sec. Admin.*, No. 1:20-CV-02838-PAG, 2022 WL 1813586, at *9 (N.D. Ohio Apr. 8, 2022), *report and recommendation adopted sub nom., Petro v. Comm'r of Soc. Sec.*, 2022 WL 1804888 (N.D. Ohio June 2, 2022).

While Mr. Grier cites evidence that supports his position, the ALJ, consistent with *Earley*, considered evidence post-dating the alleged disability onset date, but the ALJ identified conflicting objective and opinion evidence, did not find material evidence of a worsening back condition, and discussed evidence supporting her conclusion. *Black*, 2021 WL 371730, at *17. Here, Mr. Grier's argument in essence constitutes an impermissible request for the Court to reweigh the evidence. At this stage of review, a district court does "not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Dowdell v. Commissioner of Soc. Sec.*, No. 1l22-CV-01348-JRA, 2023 WL 4708124, at *11 (June 29, 2023), *report and recommendation adopted*, 2023 WL 4706726 (N.D. Ohio July 24, 2023).

The limited role of a district court is to determine whether there is substantial evidence in the record, taken as a whole, to support the findings. *Skinner v. Sec'y of Health & Hum. Servs.*, 902 F.2d 447, 448 (6th Cir. 1990). "Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion." *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The Commissioner enjoys a "zone of choice" within which to decide cases without risking being second-guessed by a court. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). The ALJ adequately considered the subjective allegations in the context of the whole record. Accordingly, I find that Mr. Grier's sole assignment of error is without merit.

## VI.     RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

Dated: August 24, 2023                    *s/ Jennifer Dowdell Armstrong*
                                          Jennifer Dowdell Armstrong
                                          U.S. Magistrate Judge

## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same

argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d 505). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).